**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

STAR COMPUTER GROUP, INC.                  Case No.:  15-28100-AJC

      Debtor.                                          Chapter 11

_____/

**DEBTOR'S EMERGENCY APPLICATION FOR ORDER AUTHORIZING, ON AN**
**INTERIM AND FINAL BASIS, EMPLOYMENT OF GLASSRATNER AS FINANCIAL**
**ADVISORS AND JAMES S. HOWARD AS CHIEF RESTRUCTURING OFFICER**
***NUNC PRO TUNC* TO THE PETITION DATE**

**(EMERGENCY HEARING REQUESTED)**
**Statement of Exigent Circumstances**
**The Debtor requests that the Court consider this Emergency Motion as soon as its calendar**
**permits in order to ensure that the Debtor is able to retain the Chief Restructuring Officer**
**as soon as possible. Pursuant to Rule 9075-1, the Debtor represents that it will promptly**
**confer with opposing counsel in an effort to resolve the issues raised in this Emergency**
**Motion in advance of the hearing thereon.**

Star Computer Group, Inc. (the "Debtor"), pursuant to §§ 327(a), 328 and 1107 of Title

11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and Rules

2014, 2016 and 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

moves for the entry of interim and final orders authorizing the employment and retention of

James S. Howard and the advisory firm of GlassRatner Advisory & Capital Group LLC

("GlassRatner") in connection with this Chapter 11 case in accordance with the terms and

conditions set forth  on the attached Exhibit A.  Mr. Howard, with the assistance and support of

GlassRatner, has served as the Debtor's Chief Restructuring Officer ("CRO") since September

11, 2015, and would continue to do so during the pendency of the case.

In support of this application, the Debtor submits the Declaration of James S. Howard

(the "Howard Declaration"), which is attached hereto as Exhibit B, and the contemporaneously

filed Declaration of James S. Howard in Support of Debtor's Chapter 11 Petition and Request for First Day Relief ("First Day Declaration"). In further support of this application, the Debtor respectfully states as follows:

## Jurisdiction and Venue

1.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    The statutory bases for the relief requested herein are sections 327(a) and 328 of the Bankruptcy Code, Rules 2014(a) and 2016 of the Bankruptcy Rules and Local Rules 2014-1 and 2016-1.

## Background

3.    On October 12, 2015 (the "Petition Date"), the Debtor filed a voluntary petition for bankruptcy relief under Chapter 11 the Bankruptcy Code in this Court.

4.    The Debtor is currently operating its business and managing its affairs as debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

5.    No trustee, examiner or creditors' committee has been appointed in the Debtor's Chapter 11 case.

6.    The Debtor was engaged in the business of supplying wholesale computers, smart phones, and related equipment and software to dealers and wholesalers in Latin America. For a detailed description of the Debtor's state of affairs, the Debtor respectfully refers the Court and parties-in-interest to the First Day Declaration filed contemporaneously herewith.

## Retention of Howard and GlassRatner

7.     The Debtor intends to pursue the wind down of its affairs in order to fund distributions to creditors through a Chapter 11 plan.  The Debtor believes that is necessary to have professionals with the requisite accounting, financial and managerial experience in order to maximize the outcome of this case for creditors. To that end, the Debtor believes that Mr. Howard and GlassRatner are eminently qualified to advise the Debtor with regard to its obligations.

8.     The Debtor initially engaged GlassRatner as its financial advisor on May 14, 2015.  On September 11, 2015, Mr. Howard was further engaged by the Debtor as its Chief Restructuring Officer.

9.     As detailed in the Howard Declaration, Mr. Howard and GlassRatner have the knowledge, experience, and qualifications necessary to best represent the Debtor in this case.

10.     The terms and conditions of the requested retention of Mr. Howard and GlassRatner, including details concerning compensation, are set forth in the engagement letter attached to the Howard Declaration.

11.     Mr. Howard and GlassRatner are "disinterested" persons within the meaning of the Bankruptcy Code, and hold or represent no interests adverse to the Debtor.

12.     The Debtor has been informed that Mr. Howard and GlassRatner will conduct an ongoing review of their files to ensure that no disqualifying circumstances arise, and if any new relevant facts or relationships are discovered, they will promptly supplement this disclosure to the Court.

**Relief Requested**

13.     Based on the foregoing, the Debtor submits the relief requested is necessary and appropriate, is in the best interest of the estate and creditors, and should be granted.

14.     Accordingly, the Debtor requests that it be permitted to employ and retain Mr. Howard and GlassRatner pursuant to the terms outlined in this Application and the Howard Declaration.

15.     The Debtor further seeks the retention of Mr. Howard and GlassRatner on an interim basis to avoid the imposition of irreparable harm that will inure to the Debtor's estate absent the relief sought hereby.

**Supporting Authority**

16.     Pursuant to Bankruptcy Rule 6003, the court may grant relief regarding an application pursuant to Bankruptcy Rule 2014 to retain a professional within 21 days after the filing of the petition to the extent the relief is necessary to avoid immediate and irreparable harm. Bankruptcy Rule 6003, however, does not expressly forbid courts from entering interim orders approving professional retentions during the first 21 days of a Chapter 11 case. *See, e.g., In re First NLC Fin. Servs, LLC*, 382 B.R. 547 (Bankr. S.D. Fla., 2008) (approving interim retentions of financial advisor and legal counsel on interim basis on the same terms as requested herein within first 20 days of Chapter 11 case).

17.     Failure to have all of its resources readily available during the first 21 days of the cases will severely hamper the Debtor's initial restructuring efforts and could jeopardize the ultimate outcome of the case.  Therefore, the Debtor submits that it has satisfied the requirements of Bankruptcy Rule 6003 to support immediate entry of an interim order, substantially in the form annexed hereto as Exhibit C, authorizing the Debtor to retain and employ Mr. Howard and

4

GlassRatner on an interim basis  This interim form of relief ensures the availability of its full resources to the Debtor during a critical period in this case, while preserving the ability of all parties in interest, including the U.S. Trustee, to object to this Application on a final basis.

18.     The form of the proposed order granting this application annexed hereto as Exhibit C clearly and unequivocally preserves any objections of all creditors and parties in interest to the final hearing on this application and further provides that any such objections will be considered *de novo.* Accordingly, no party is prejudiced by the limited relief sought by this application and the objective of the drafters of Rule 6003 is not frustrated.

## Notice of Final Hearing

19.     Upon entry of the interim order, the Debtor will serve, by overnight delivery, telecopy or electronic mail, a copy of the interim order on those parties identified on the Master Service List and any other entities that the Court may direct.

20.     No prior application for the relief requested herein has been made to this or any other court.

**WHEREFORE**, the Debtor respectfully requests the entry of an order (a) authorizing the Debtor to employ James S. Howard and the advisory firm of GlassRatner Advisory & Capital Group LLC on an interim basis; (b) authorizing the continued employment of Mr. Howard as the Debtor's Chief Restructuring Officer on an interim basis; (c) scheduling a final hearing on this Application; and (d) granting the Debtor such other and further relief as is just.

Dated:   October 12, 2015

STAR COMPUTER GROUP, INC.,


By: /s/ James S. Howard_____
James S. Howard, CRO

F12979

# EXHIBIT A



## CHIEF RESTRUCTURING OFFICER
## ENGAGEMENT LETTER AGREEMENT

September 11, 2015

<u>Via Electronic Mail Delivery</u>

Mr. Henry Waissmann
Board of Directors
Star Computer Group, Inc.

**RE:    Engagement of GlassRatner Advisory & Capital Group, LLC as the Chief Restructuring Officer for Star Computer Group, Inc.**

Dear Henry,

This letter confirms and sets forth the terms and conditions of the engagement between GlassRatner Advisory & Capital Group, LLC ("GlassRatner") and the Company, including the scope of the services to be performed and the basis of compensation for those services. Upon execution of this letter by each of the parties below, this letter will constitute an agreement between the Company and GlassRatner.

    1.    <u>Description of Services</u>

        a.    <u>Officers</u>.  In connection with this engagement, GlassRatner shall make available to the Company Jim Howard to serve as the Chief Restructuring Officer(s) of the Company (the "CRO"). In addition, GlassRatner shall provide the services of other GlassRatner personnel at the direction of the CRO, but with the consent of the Company.

        b.    <u>Duties and Powers</u>.

            (i)    The CRO shall be an officer of the Company and shall have the duties of a Chief Executive Officer including, but not limited to: (a) managing all aspects of the Company's business activities and operations, including budgeting, cash management and finance

1

(b) negotiations regarding the relationship with the Company's lender and investors, (c) negotiations with vendors, customers and other creditors (d) hiring and terminating of employees of the Company, (e) review daily activity to the bank and certify the accuracy and representations on the Company's behalf, (f) explore liquidity options including restructuring, refinancing and reorganizing (g) reviewing and approving or not approving purchases and expenses (h) preparing and holding the Company to the budgets prepared and submitted by the CRO.

(ii)    The CRO understands that the Company has engaged the law firm Kozyak Tropin & Throckmorton as its counsel ("Counsel).

(iii)   The CRO shall assist the Company in pursuing a refinancing or restructuring of the obligations due the Company's secured lender which may include solicitation of multiple capital sources but shall only be involved in any refinancing efforts or negotiations to the extent requested by the Board of Directors.

(iv)    The CRO shall assist the Company in evaluating and executing restructuring alternatives.

(iv)    The CRO shall assist the Company as necessary with the wind down and liquidation of the Company,

(v)     The CRO shall not have authority over (a) approving  a sale of substantially all the assets of the Company; and, (b) causing the Company to commence a proceeding under Chapter 11 of the Bankruptcy Code, to commence an assignment for the benefit of creditors,  or to take such other judicial action with respect to the Company.  Again these activities would require Board approval.

c.      Reporting.  The CRO shall report to the Board of the Company provided, however, that the CRO shall not require the consent or approval of the Board to take action (or elect not to take action) in such officer's capacity as CRO; provided further, however, the CRO shall routinely consult and provide the Board with the status of actions which have been initiated and/or actions which are being planned but not yet initiated.

d.      Employment by GlassRatner.  The CRO will continue to be employed by GlassRatner and while rendering services to the Company continue to work with other personnel at GlassRatner in connection with other unrelated matters, which will not unduly interfere with services pursuant to this engagement.  With respect to the Company, however, the CRO shall operate pursuant to the terms of this Agreement.

2

e. <u>Projections; Reliance; Limitation of Duties</u>.   You understand that the services to be rendered by the CRO may include the preparation of projections and other forward-looking statements, and that numerous factors can affect the actual results of the Company's operations, which may materially and adversely differ from those projections and other forward-looking statements.   In addition, the CRO will be relying on information provided by other members of the Company's management in the preparation of those projections and other forward-looking statements. Neither the CRO nor GlassRatner makes any representation or guarantee that a refinancing of obligations to the Company's secured lender will occur, or that the Company's secured lender will continue to provide financing or that the business will achieve or not achieve a particular result. Further, that any restructuring plan formulated for the Company, or selected by the CRO, will be more successful than all other possible restructuring alternatives or that any proposed restructuring alternative will be accepted by any of the Company's creditors and other constituents.

2. <u>Compensation</u>

a. GlassRatner will be paid by the Company for the services of the CRO and Interim CFO at standard hourly rates.  Services provided to the Company by other GlassRatner personnel to support the CRO in carrying the services outlined herein shall be paid by the Company at the standard hourly rates of such GlassRatner personnel. GlassRatner will notify the Board if additional personnel are required with an estimate of such non-CRO services to be provided. Such fee estimate assumes that the Company provides personnel to assist in carrying out the CRO's duties and that the Company does not commence a bankruptcy proceeding or an assignment for the benefit of creditors. If these assumptions are not the case, GlassRatner and the Company shall in good faith negotiate a change in the compensation provided herein.

b. Standard hourly rates for the professionals expected to be involved are as follows:

| Professional | Role | Hourly Rate |
|---|---|---|
| Jim Howard | CRO | $425 |
| Jason Cristal, CIRA | Interim CFO | $350 |
| Other Staff | As needed | $195 - $350 |

c. In addition, GlassRatner will be reimbursed by the Company for the reasonable out-of-pocket expenses of the CRO, and if applicable, other GlassRatner personnel, incurred in connection with this assignment. In addition, GlassRatner shall be reimbursed by the Company for the reasonable fees and expenses of its counsel incurred in connection with the enforcement of this Agreement.

3

d.      Fees are due upon receipt of monthly invoices and payable no later than the following Friday during the Term of this Agreement.

3.    <u>Term</u>

The engagement will commence effective immediately and may be terminated by either party without cause by giving 7 days written notice to the other party.   In the event of any such termination, any fees and expenses due to GlassRatner shall be applied to the remaining balance of the advance payment to the extent a balance exists and then any additional fees and expenses shall be remitted promptly (including fees and expenses that accrued prior to but were invoiced subsequent to such termination).  The Company's obligations under paragraph 8 shall survive the termination of the Agreement.

4.    <u>No Audit, Duty to Update</u>

It is understood that the CRO and GlassRatner are not being requested to perform an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of the AICPA, SEC or other state or national professional or regulatory body.  They are entitled to rely on the accuracy and validity of the data disclosed to them or supplied to them by employees and representatives of the Company.  The CRO and GlassRatner are under no obligation to update data submitted to them or review any other areas.

5.    <u>No Third Party Beneficiary</u>

The Company acknowledges that all advice (written or oral) given by GlassRatner to the Company in connection with this engagement is intended solely for the benefit and use of the Company (limited to the shareholders of the Company and management) in considering the matters to which this engagement relates.  The Company agrees that no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks referred to herein without GlassRatner's prior approval (which shall not be unreasonably withheld), except as required by law.

6.    <u>Conflicts</u>.

GlassRatner is not currently aware of any relationship that would create a conflict of interest with the Company or those parties-in-interest of which you have made us aware.   Because GlassRatner is a consulting firm that serves Companies on an international basis in numerous cases, both in and out of court, it is possible that GlassRatner may have rendered services to or have business associations with other entities or people which had or have or may have relationships with the Company, including creditors of the Company.

4

Very truly yours,

**GLASSRATNER ADVISORY & CAPITAL GROUP, LLC,** a Georgia Limited Liability Company

By: _____
Name:   Jim Howard

Accepted and Agreed:

_____
Authorized Member of Board of Directors
Star Computer Group, Inc.

## INDEMNITY PROVISIONS

A.        (the "Company")  agrees to indemnify and hold harmless each of GlassRatner Advisory & Capital, LLC ("GlassRatner"), GlassRatner's shareholders, officers, employees, agents, representatives and subcontractors (each, an "Indemnified Party" and collectively, the "Indemnified Parties") against any and all losses, claims, damages, liabilities, penalties, obligations and expenses, including the costs for counsel or others (including employees of GlassRatner, based on their then current hourly billing rates) in investigating, preparing or defending any action or claim, whether or not in connection with litigation in which any Indemnified Party is a party, or enforcing the Agreement (including these indemnity provisions), as and when incurred, caused by, relating to, based upon or arising out of (directly or indirectly) the Indemnified Parties' acceptance of or the performance or nonperformance of their obligations under the Agreement; provided, however, such indemnity shall not apply to any such loss, claim, damage, liability or expense to the extent it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted from such Indemnified Party's gross negligence or willful misconduct.  The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with the engagement of GlassRatner, except to the extent that any such liability for losses, claims, damages, liabilities or expenses are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted from such Indemnified Party's gross negligence or willful misconduct.  The Company further agrees that it will not, without the prior consent of an Indemnified Party, settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect of which such Indemnified Party is entitled to indemnification hereunder (whether or not such Indemnified Party is an actual party to such claim, action, suit or

6

proceedings) unless such settlement, compromise or consent includes an unconditional release of such Indemnified Party from all liabilities arising out of such claim, action, suit or proceeding.

B.    These indemnification provisions shall be in addition to any liability, which the Company may otherwise have to the Indemnified Parties. In the event that, at any time whether before or after termination of the engagement or the Agreement, as a result of or in connection with the Agreement or GlassRatner's and its personnel's role under the Agreement, GlassRatner or any Indemnified Party is required to produce any of its personnel (including former employees) or for examination, deposition or other written, recorded or oral presentation, or GlassRatner or any of its personnel (including former employees) or any other Indemnified Party is required to produce or otherwise review, compile, submit, duplicate, search for, organize or report on any material within such Indemnified Party's possession or control pursuant to a subpoena or other legal (including administrative) process, the Company will reimburse the Indemnified Party for its out of pocket expenses, including the reasonable fees and expenses of its counsel, and will compensate the Indemnified Party for the time expended by its personnel based on such personnel's then current hourly rate.

C.    If any action, proceeding or investigation is commenced to which any Indemnified Party proposes to demand indemnification hereunder, such Indemnified Party will notify the Company with reasonable promptness.  The Company shall promptly pay expenses reasonably incurred by any Indemnified Party in defending, participating in, or settling any action, proceeding or investigation in which such Indemnified Party is a party or is threatened to be made a party or otherwise is participating in by reason of the engagement under the Agreement, upon submission of invoices therefor, whether in advance of the final disposition of such action, proceeding, or investigation or otherwise.  Each Indemnified Party hereby undertakes, and the Company hereby accepts its undertaking, to repay any and all such amounts so advanced if it shall ultimately be determined that such Indemnified Party is not entitled to be indemnified therefor.  If any such action, proceeding or investigation in which an Indemnified Party is a party is also against the Company, the Company may, in lieu of advancing the expenses of separate counsel for such Indemnified Party, provide such Indemnified Party with legal representation by the same counsel who represents the Company, provided such counsel is reasonably satisfactory to such Indemnified Party, at no cost to such Indemnified Party; provided, however, that if such counsel or counsel to the Indemnified Party shall determine that due to the existence of actual or potential conflicts of interest between such Indemnified Party and the Company such counsel is unable to represent both the Indemnified Party and the Company, then the Indemnified Party shall be entitled to use separate counsel of its own choice (and the Company shall be liable to pay for the reasonable fees and expenses of only one law firm for all of the Indemnified Parties, collectively), and the Company shall promptly advance its reasonable expenses of such separate counsel upon submission of invoices therefor.  Nothing herein shall prevent an Indemnified Party from using separate counsel of its own choice at its own expense. The Company will be liable for any settlement of any claim against an Indemnified Party made with the Company's written consent, which consent shall not be unreasonably withheld.

D.    In order to provide for just and equitable contribution if a claim for indemnification pursuant to these indemnification provisions is made but it is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) that such indemnification may not be enforced in such case, even though the express provisions hereof provide for indemnification, then the relative fault of the Company, on the one hand, and the Indemnified Parties, on the other hand, in connection with the statements, acts or omissions which resulted in the losses, claims, damages, liabilities and costs giving rise to the indemnification claim and other relevant equitable considerations shall be considered; and further provided that in no event will the

Indemnified Parties' aggregate contribution for all losses, claims, damages, liabilities and expenses with respect to which contribution is available hereunder exceed the amount of fees actually received by the Indemnified Parties pursuant to the Agreement.  No person found liable for a fraudulent misrepresentation shall be entitled to contribution hereunder from any person who is not also found liable for such fraudulent misrepresentation.

E.      In the event the Company and GlassRatner seek judicial approval for the assumption of the Agreement or authorization to enter into a new engagement agreement pursuant to either of which GlassRatner would continue to be engaged by the Company, the Company shall promptly pay expenses reasonably incurred by the Indemnified Parties, including attorneys' fees and expenses, in connection with any motion, action or claim made either in support of or in opposition to any such retention or authorization, whether in advance of or following any judicial disposition of such motion, action or claim, promptly upon submission of invoices therefor and regardless of whether such retention or authorization is approved by any court.  The Company will also promptly pay the Indemnified Parties for any expenses reasonable incurred by them, including attorneys' fees and expenses, in seeking payment of all amounts owed it under the Agreement (or any new engagement agreement) whether through submission of a fee application or in any other manner, without offset, recoupment or counterclaim, whether as a secured claim, an administrative expense claim, an unsecured claim, a prepetition claim or a postpetition claim.

F.      Neither termination of the Agreement nor termination of GlassRatner's engagement nor the filing of a petition under Chapter 7 or 11 of the United States Bankruptcy Code (nor the conversion of an existing case to one under a different chapter) shall affect these indemnification provisions, which shall hereafter remain operative and in full force and effect. No party shall be entitled to seek or receive an award of special, punitive or consequential damages pursuant to the Agreement or by reason of any breach or default under the Agreement.

G.      The rights provided herein shall not be deemed exclusive of any other rights to which the Indemnified Parties may be entitled under the certificate of incorporation or bylaws of the Company, any other agreements, any vote of stockholders or disinterested directors of the Company, any applicable law or otherwise.

7.    <u>Confidentiality / Non-Solicitation</u>.

The CRO and GlassRatner shall keep as confidential all non-public information received from the Company in conjunction with this engagement, except (i) as requested by the Company or its legal counsel; (ii) as required by legal proceedings or (iii) as reasonably required in the performance of this engagement.  All obligations as to non-disclosure shall cease as to any part of such information to the extent that such information is or becomes public other than as a result of a breach of this provision.

8.    <u>Indemnification</u>.

The Company shall indemnify GlassRatner and the CRO to the same extent as the most favorable indemnification it extends to its officers or directors, whether under the Company' bylaws, its certificate of incorporation, or otherwise, and no reduction or termination in any of the benefits provided under any such indemnities shall affect the benefits provided to GlassRatner and the CRO.  The CRO shall be covered as an officer under the Company's existing director and officer liability insurance policies if such policy is in effect and the Company shall also maintain any such insurance coverage for the CRO for a period of not less than two years following the date of the termination of such officer's services hereunder.  The attached indemnity provisions are incorporated herein and the termination of this agreement or the engagement shall not affect those provisions, which shall survive termination.  The provisions of this section 8 are in the nature of contractual obligations and no change in applicable law or the Company' charter, bylaws, or other organizational documents or policies shall affect the CRO's or GlassRatner's rights hereunder.

9.    <u>Miscellaneous</u>.

This Agreement shall (together with the attached indemnity provisions) be:  (a) governed and construed in accordance with the laws of Georgia, regardless of the laws that might otherwise govern under applicable principles of conflict of laws thereof; (b) incorporates the entire understanding of the parties with respect to the subject matter thereof; and (c) may not be amended or modified except in writing executed by each of the signatories hereto.  The Company and GlassRatner agree to waive trial by jury in any action, proceeding or counterclaim brought by or on behalf of the parties hereto with respect to any matter relating to or arising out of the performance or non-performance of the Company or GlassRatner hereunder.

If the foregoing is acceptable to you, kindly sign the enclosed copy to acknowledge your agreement with its terms.

5

# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

STAR COMPUTER GROUP, INC.,                    Case No.: 15-28100-AJC

      Debtor.                                              Chapter 11

_____/

**DECLARATION OF JAMES S. HOWARD IN SUPPORT OF DEBTOR'S**
**EMERGENCY APPLICATION FOR ORDER AUTHORIZING, ON AN**
**INTERIM AND FINAL BASIS, EMPLOYMENT OF GLASSRATNER AS**
**FINANCIALADVISORS AND JIM HOWARD AS CHIEF RESTRUCTURING**
**OFFICER *NUNC PRO TUNC* TO THE PETITION DATE**

James S. Howard, being duly sworn, hereby states as follows:

1.      I am a Senior Managing Director with GlassRatner Advisory & Capital Group LLC ("GlassRatner"), a financial and business advisory services firm with numerous offices throughout the country. I submit this declaration on behalf of GlassRatner (the "**Declaration**") in support of the Debtor's Emergency Application for Order Authorizing, on an Interim and Final Basis, Employment of GlassRatner as Financial Advisors and James S. Howard as Chief Restructuring Officer *Nunc Pro Tunc* to the Petition Date (the "**Application**")[1] on the terms and conditions set forth in the Application and the engagement letter, dated September 11, 2015, entered into between the Debtor and GlassRatner and attached to the Application as Exhibit A (the

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to such terms in the Application.

"**Engagement Letter**"), *nunc pro tunc* to the Petition Date.  Except as otherwise noted, I

have personal knowledge of the matters set forth herein.[2]

## I. QUALIFICATIONS

2.     GlassRatner is experienced in helping companies address crisis situations

through the execution of an operational or financial turnaround, negotiation of an out-of-

court financial restructuring, or through an orderly bankruptcy filing, and regularly

advises debtors, shareholders, equity committees, lenders and creditors in Chapter 11

proceedings, including:

- Recovery planning and development;
- Budgeting and cash flow forecasts;
- DIP financing and/or exit financing, including negotiations with lenders;
- Operating metric reports and tracking systems;
- Developing plans of reorganization, including negotiations with lenders, creditors and other parties-in-interest;
- Financial performance monitoring;
- Liquidation of non-core business assets;
- Sale of part or all of a company as a going concern in a Section 363 sale;
- Ongoing consulting services; and
- Assuming interim management level responsibilities, including Chief Restructuring Officer, Chief Executive Officer, Chief Operating Officer, Chief Financial Officer, and Treasurer.

3.     On May 14, 2015, GlassRatner was first engaged as financial advisor to

the Debtor.  On September 11, 2015, the Debtor further engaged me to serve as Chief

---

[2]   Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at GlassRatner and are based on information provided by such professionals.

Restructuring Officer, pursuant to the terms and conditions set forth in the Engagement Letter.

## II.   DISINTERESTEDNESS AND ELIGIBILITY

4.     Glass Ratner (the "**Firm**") utilizes certain procedures (the "**Firm Procedures**") to determine its relationships, if any, to parties that may have a connection to the Debtor in this chapter 11 Case.   In implementing the Firm Procedures, the following actions were taken to identify parties that may have connections to the Debtor and to determine the Firm's relationship with such parties:

   (a)     GlassRatner requested and obtained from the Debtor lists of interested parties and creditors (the "Potential Parties in Interest").   The Potential Parties in Interest reviewed include, among others, the Debtor and its non-filing affiliates, prepetition lenders, current and former officers and directors, unsecured creditors of the Debtor (on a consolidated basis), parties holding ownership interests in the Debtor and various professionals related to the Engagement.

   (b)     GlassRatner then compared the names of each of the Potential Parties in Interest to the names in the master electronic database of the Firm's current and former clients (the "**Client Database**").   The Client Database generally includes the name of each client of GlassRatner, the name of each party who is or was known to be adverse to such client of the Firm in connection with the matter in which the Firm is representing such client, the name of each party that has, or has had, a substantial role with regard to the subject matter of the Firm's retention, and the names of Engagement Personnel who are or were primarily responsible for matters for such clients.

   (c)     An email was issued to all Firm professionals requesting disclosure of information regarding:  (i) any known personal connections between the respondent and/or the Firm on the one hand, and either the Potential Parties in Interest or the Debtor, on the other hand;[3] (ii) any known

---

[3]     In reviewing its records and the relationships of its professionals, GlassRatner did not seek information as to whether any Firm personnel or member of his/her immediate family: (a) indirectly owns, through a public mutual fund or through partnerships in which certain GlassRatner personnel have invested but as to which such professionals have no control over or knowledge of investment decisions, securities of the Debtor or any other party in interest, or (b) has engaged in any ordinary course consumer transaction with any party in interest.  If any such relationship does exist, I do not believe it would impact GlassRatner's

connection or representation by the respondent and/or the Firm of any of the Potential Parties in Interest in matters relating to the Debtor; and (iii) any other conflict or reason why the Firm may be unable to represent the Debtor.

(d)    Any known connections between former or recent clients of the Firm and the Potential Parties in Interest were compiled for purposes of preparing this Declaration.

5.    As a result of the Firm Procedures, I have thus far ascertained that, except as may be set forth herein, upon information and belief, if retained, GlassRatner:

(a)    is not a creditor of the Debtor (including by reason of unpaid fees for prepetition services) or an equity security holder of the Debtor;

(b)    is not and has not been, within 2 years before the date of the filing of the petition, a director, officer (other than by virtue of GlassRatner employees serving in the roles as Engagement Personnel (pre and post petition) as described in the Application), or an employee of the Debtor; and

(c)    does not have any interest materially adverse to the interests of the Debtor's estate, or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtor, or for any other reason.

6.    As can be expected with respect to any international professional services firm such as the Firm, the Firm provides services to many clients with interests in the Debtor's Chapter 11 Case.  To the best of my knowledge, except as indicated below, the Firm's services for such clients do not relate to the Debtor's Chapter 11 Case.

7.    Further, as part of its diverse practice, the Firm appears in numerous cases and proceedings, and participates in transactions that involve many different professionals, including attorneys, accountants, and financial consultants, who represent claimants and parties-in-interest in the Debtor's Chapter 11 Case.  Further, GlassRatner

---

disinterestedness or otherwise give rise to a finding that GlassRatner holds or represents an interest adverse to the Debtor's estate.

has performed in the past, and may perform in the future, advisory consulting services for various attorneys and law firms, and has been represented by several attorneys and law firms, some of which may be involved in these proceedings. Based on our current knowledge of the professionals involved, and to the best of my knowledge, none of these relationships create interests materially adverse to the Debtor in matters upon which the Firm is to be employed, and none are in connection with this case.

8.      If any new material relevant facts or relationships are discovered or arise, GlassRatner will promptly file a supplemental declaration.

## III.  COMPENSATION

9.      Subject to Court approval of the Application and in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, applicable U.S. Trustee guidelines, and the Local Rules for the United States Bankruptcy Court for the Southern District of Florida, GlassRatner will seek from the Debtor payment for compensation on an hourly basis for all Engagement Personnel, and reimbursement of actual and necessary expenses incurred by GlassRatner. GlassRatner's customary hourly rates as charged in bankruptcy and non-bankruptcy matters of this type by the professionals assigned to this engagement are outlined in the Engagement Letter attached hereto. These hourly rates are adjusted annually.

10.      To the best of my knowledge, (i) no commitments have been made or received by GlassRatner with respect to compensation or payment in connection with these cases other than in accordance with applicable provisions of the Bankruptcy Code and the Bankruptcy Rules, and (ii) GlassRatner has no agreement with any other entity to share with such entity any compensation received by GlassRatner in connection with this chapter 11 case.

11.     By reason of the foregoing, I believe GlassRatner is eligible for retention by the Debtor pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and the applicable Bankruptcy Rules and Local Rules.

12.     This concludes my declaration.

### 28 U.S.C. § 1746 Declaration

I declare under penalty of perjury that the foregoing is true and correct.  Executed on October 12, 2015.

James S. Howard

13390.3

# EXHIBIT C

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

STAR COMPUTER GROUP, INC.,                    Case No.: 15-28100-AJC

    Debtor.                                            Chapter 11

_____/

**INTERIM ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION**
**OF GLASSRATNER AS FINANCIAL ADVISORS AND JAMES S. HOWARD AS CHIEF**
**RESTRUCTURING OFFICER, _NUNC PRO TUNC_ TO THE PETITION DATE**

THIS MATTER came before the Court on October ___, 2015 at ____ __.m. upon the application (the "Application") of the above-captioned debtor for the entry of an interim order authorizing the Debtor to employ and retain GlassRatner Advisory & Capital Group LLC ("GlassRatner") as financial advisors, with James S. Howard to serve as Chief Restructuring Officer ("CRO") (ECF No. ____), and the related Declaration of James S. Howard (the "Howard Declaration"), and the Declaration of James S. Howard in Support of Debtor's Chapter 11 Petition and Request for First Day Relief (the "First Day Declaration") (ECF No. __). The

Application requests entry of an order, on an interim and final basis, approving Debtor's employment of Howard as their Chief Restructuring Officer, to be assisted by GlassRatner, in the above-referenced Chapter 11 case.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). The Court is authorized to grant the relief requested in the Application under 11 U.S.C. §§ 327(e), 328, and 1107 of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code"), Fed. R. Bankr. P. 2014(a), and Local Rule 2014-1.

The Howard Declaration accompanying the Application makes relevant disclosures as required by Fed. R. Bankr. P. 2014 and Fed. R. Bankr. P. 2016, and constitutes a verified statement demonstrating that GlassRatner and Mr. Howard are disinterested as required by 11 U.S.C. § 327.

Bankruptcy Rule 6003 states, in pertinent part: "Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding the following: (a) an application under Rule 2014 . . . ." An application under Bankruptcy Rule 2014 is one for approval of employment of a professional pursuant to 11 U.S.C. §§ 327, 1103, or 1114.

The Debtor requires Mr. Howard's assistance in this case, and the Court finds that withholding approval of an application for interim retention of a professional for twenty-one days would cause immediate and irreparable harm to the estate.

The Court adopts the following procedure for retention of Mr. Howard and GlassRatner on an interim basis within the first twenty days following commencement of a case. The Court will

enter an order approving retention of Mr. Howard and GlassRatner on an interim basis until a final hearing can be convened, at least twenty-one days post-petition, after notice to all parties in interest and the United State Trustee. All objections to the retention of Mr. Howard and GlassRatner will be preserved until the final hearing at which time the Court will review any such objections de novo and determine the merits of the application. This procedure complies with the requirements of Fed. R. Bankr. P. 6003. It also ensures that debtors-in-possession are represented by professionals so that they may fulfill their duties under the Bankruptcy Code during the first twenty-one days after commencement of a case and until such time as a final hearing on the application for employment can be convened.

The Court having reviewed the Application and the Howard Declaration, and being otherwise fully advised in the premises, it is

**ORDERED** that:

1.      The Application is **GRANTED** as provided herein.

2.      The employment by the Debtor of James S. Howard and GlassRatner in this case is **APPROVED** pursuant to 11 U.S.C. § 327(e), on an interim basis, pending the final hearing as set forth below.

3.      The employment of Mr. Howard and GlassRatner by the Debtor shall be *nunc pro tunc* to the Petition Date.

4.      Mr. Howard and GlassRatner shall apply for compensation and reimbursement of costs pursuant to 11 U.S.C. §§ 330 and 331, at its ordinary rates and charges, as they may be adjusted from time to time, for services rendered and costs incurred on behalf of the Debtor.

5.      The Court shall conduct a final hearing on the Application on

_____, 2015 at _____ ___.m. at the United States Bankruptcy Court, 301 N.

Miami Avenue, Room _____, Miami, Florida.

6.      Entry of this interim order is without prejudice to the rights of any party in interest

to interpose an objection to the Application, and any such objection will be considered on a de

novo basis at the final hearing.

7.      This Court shall retain jurisdiction to hear and determine all matters arising from

or related to the implementation of this Order.

# # #

Submitted by:

Corali Lopez-Castro
Florida Bar No. 863830
**KOZYAK TROPIN & THROCKMORTON, LLP**
2525 Ponce de Leon Boulevard, 9th Floor
Miami, Florida 33134
Tel: (305) 372-1800
Fax: (305) 372-3508

*Proposed Counsel to the Debtor*

Copies to:

Corali Lopez-Castro
*(Attorney Lopez-Castro shall upon receipt serve a copy of this Order upon all interested parties and file a certificate of service.)*

F14342

4