UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                                          Case No.

STAR COMPUTER GROUP, INC.,                                      Chapter 11

    Debtor

_____/

# DECLARATION OF JAMES S. HOWARD IN SUPPORT OF DEBTOR'S CHAPTER 11 PETITION AND REQUEST FOR FIRST DAY RELIEF

I hereby declare that the following is true to the best of my knowledge, information, and belief:

My name is James S. Howard. I am over the age of eighteen and am fully competent to testify. I am the Chief Restructuring Officer ("CRO") of Star Computer Group, Inc. ("Star Computer" or "Debtor"). I have personal knowledge of the facts set forth herein.

I.    **FACTUAL BACKGROUND**

1. On October 12, 2015 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code. The Debtor continues to operate its business as debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

2. The Debtor was founded in 1994 and its office is located at 2175 N.W. 115 Avenue, Miami, FL 33172 (the "Real Property"). The Debtor is a Florida corporation

jointly owned by Henry Waissmann ("Waissmann") (54%) and Henry Aguilar (46%). I currently serve as CRO of the Debtor.

3. Prior to the Petition Date, the Debtor was engaged in the business of supplying wholesale computers, smart phones, and related equipment and software to dealers and wholesalers in Latin America.

4. The Debtor is insolvent as that term is defined in the Bankruptcy Code.

**A. Secured and Unsecured Claims**

5. The Debtor has only four secured creditors, the largest of which is BankUnited, National Association ("BankUnited") pursuant to a Working Capital Loan Agreement (the "Loan Agreement") dated September 28, 2012 in the maximum principal amount of $40 million.

6. The borrowers under the Loan Agreement include the Debtor and the following non-debtor entities: Quorum Computer Colombia, S.A., a corporation organized under the laws of Colombia ("Quorum Colombia"), Quorum Computadora De Chile Limitada, a corporation organized under the laws of Chile ("Quorum Chile"), Quorum Computer De Mexico S De RL De CV, a corporation organized under the laws of Mexico ("Quorum Mexico"), and Quorum Computer S.R.L., a corporation organized under the laws of Argentina ("Quorum Argentina," and together with Star, Quorum Colombia, Quorum Chile, and Quorum Mexico, "Star Borrowing Group").

7. In furtherance of the Loan Agreement, the Star Borrowing Group executed and delivered to BankUnited that certain Revolving Working Capital Promissory Note, dated effective as of September 28, 2012 (the "Note"), payable to BankUnited in the amount of and evidencing the $40 million loan.

8.     As further security for performance of their obligations under the Loan Agreement and Note, the Debtor executed and delivered to BankUnited a Blanket Security Agreement (the "Security Agreement"), also effective as of September 28, 2012, granting BankUnited a security interest in nearly all of the Debtor's assets excluding the Real Property (the "Collateral").

9.     In addition, Waissmann executed and delivered to BankUnited an Unconditional and Continuing Guaranty Agreement (the "Guaranty") and a Garnishment Waiver and Agreement Regarding Subordination of Future Debt (the "Subordination Agreement") (the Loan Agreement, Note, Security Agreement, Guaranty, Garnishment Waiver and Subordination Agreement shall be referred to collectively as the "Loan Documents").

10.    On May 19, 2015, BankUnited delivered to the Star Borrowing Group, and Waissmann, a Notice of Default/Acceleration under Loan Agreement and Promissory Note (the "Default Notice"), alleging numerous events of default (the "Alleged Defaults") under the Loan Documents. The outstanding principal balance of the BankUnited loan as of May 19, 2015 was $29,734,547.21.

11.    The Star Borrowing Group and Waissmann disputed the Alleged Defaults, and BankUnited ultimately agreed to forbear from exercising certain rights and remedies with respect to the Alleged Defaults since May 19, 2015.  Notwithstanding their dispute, the parties reached an agreement pursuant to which the Debtor has been providing financial information to BankUnited on an ongoing basis, and BankUnited agreed to fund certain of the Debtor's critical operating expenses such as payroll, utilities, professional fees, and expenses related to the shipment of goods sold from funds constituting BankUnited's

collateral. BankUnited has also consented to the Debtor's use of cash collateral in this bankruptcy case.

12. The outstanding balance of the BankUnited loan on the Petition Date was approximately $11.67 million.

13. As for the other members of the Star Borrowing Group, Quorum Colombia is a subsidiary of the Debtor that distributes smart phones, tablets, computer equipment, and accessories in South America. Quorum Colombia is currently operating in a loss position, suffering as a result of the currency exchange volatility that currently exists in Colombia. Quorum Colombia's management elected to retain Colombian counsel to assist with exploring options for Quorum Colombia as a result of Star Computer's Chapter 11 filing. The Debtor has been working with management of Quorum Colombia to refine the projected recoveries from this asset. Approximately $750,000.00 has already been recovered, and it is anticipated that additional recoveries in the amount of up to $2.5 million on accounts receivable owed by Quorum Colombia to the Debtor are possible. Quorum Mexico and Quorum Chile ceased operations as of 2014 and 2013, respectively. Quorum Argentina, although formed, was never an operating entity.

14. Other secured creditors of the Debtor include Mercantile Bank, which holds a first priority lien on the Real Property, and the Small Business Administration (the "SBA"), which holds a junior lien on the Real Property. As of the Petition Date, the Debtor is indebted to Mercantile Bank in the approximate amount of $3.01 million and the SBA in the approximate amount of $2.28 million. In addition, the condo association for the Real Property holds a lien on the Real Property for unpaid fees of approximately $29,500.00.

15. The Debtor ceased making payments to trade and other unsecured creditors in May, 2015 on account of BankUnited's lien and BankUnited's exercise of its remedies under the Loan Documents. The current balance of unsecured claims is approximately $58.7 million. With BankUnited's consent, the Debtor has continued to pay critical operating expenses from BankUnited's collateral as described above.

### B. Status of Debtor's Affairs

16. Before filing its Chapter 11 petition, the Debtor has been selling its inventory, collecting its outstanding accounts receivable and marketing its Real Property in an effort to maximize the cash available to retire its obligations. The Debtor utilized its sales infrastructure to obtain favorable prices for its inventory on hand; pursued aggressive collections of its accounts receivable; and eliminated a number of employee positions, resulting in a significant reduction in payroll expenses. Waissmann has been instrumental to these efforts. He has used his contacts in and knowledge of the industry to obtain the best prices possible for inventory on hand and to effectuate the collection of accounts. He has also assisted with cutting expenses in a manner that does not hamper the orderly wind down of the Debtor. As a result of these efforts, the Debtor was able to reduce the balance of the BankUnited loan from $32 million to less than $12 million in approximately four months.

17. During this process the Debtor kept unsecured creditors apprised of the progress being made to retire the BankUnited debt, and the timetable for potential distributions being made to creditors. As a result of the Debtor's transparency, only two unsecured creditors commenced actions against the Debtor in an attempt to collect on their pre-petition debt.

18. With respect to the Real Property, the Debtor has received expressions of interest in the approximate amount of $7.5 million, although no firm offers have been made. Assuming the Debtor receives an offer that is approved by the Court of at least $7 million, based on the current mortgage debt and other closing costs, this would generate in excess of $1 million for the estate. The Debtor believes the cash generated from the sale of the Real Property is not subject to BankUnited's Security Agreement and, therefore, would be available for the payment of administrative expenses and distribution to unsecured creditors.

19. At this time, additional inventory remains to be liquidated and outstanding accounts receivable still exist, although we anticipate the bankruptcy filing will affect the pace at which the Debtor can continue these efforts. With respect to the sale of the Real Property, the Debtor is optimistic that it can receive firm offers with the continuation of its marketing efforts. It is the Debtor's goal in this case to sell its remaining assets for the best possible price, continue to collect its accounts receivable, and use the proceeds to implement a successful liquidating Chapter 11 plan.

**II.     First Day Motions**

20. Concurrently with the filing of its Chapter 11 case, the Debtor filed several First Day Motions. The Debtor requests that the Court conduct a hearing as soon as possible after the commencement of the Debtor's bankruptcy case (the "First Day Hearing"), during which the Court will hear arguments of counsel with respect to the First Day Motions.

21. I have reviewed each of the First Day Motions, including the exhibits thereto, and I believe that the relief sought in each of the First Day Motions is narrowly

tailored to meet the goals described above and, ultimately, will be critical to the Debtor's ability to maximize the value of its assets for its creditors.

### A. Debtor's Emergency Application for Authorization to Employ and Retain Kozyak, Tropin & Throckmorton. P.A. as Bankruptcy Counsel

22. The Debtor seeks authority to retain, on an interim and final basis, the law firm of Kozyak, Tropin & Throckmorton, P.A. ("KT&T") as general bankruptcy counsel *nunc pro tunc* to October 12, 2015. The Debtor understands that Corali Lopez-Castro and KT&T have extensive experience representing Chapter 11 debtors in this district (and others across the country) and that they are well-qualified to serve as general bankruptcy counsel to the Debtor. The Debtor believes it is in its best interests, and those of its creditors, that KT&T be retained to serve as Debtor's general bankruptcy counsel in its Chapter 11 case.

23. To the best of the Debtor's knowledge, except as disclosed in the *Declaration of Corali Lopez-Castro on Behalf of Kozyak, Tropin & Throckmorton, P.A. as Proposed Bankruptcy Counsel for the Debtor, Nunc Pro Tunc to the Petition Date,* affirmed by Ms. Lopez-Castro and filed by KT&T which accompanies the Application to retain it, neither Ms. Lopez-Castro nor KT&T has any connection with the Debtor's creditors or other parties in interest or their respective attorneys.

24. Counsel has informed me that limited liability companies may not appear in a Florida or federal court *pro se,* and that only a licensed attorney may appear on their behalf. Because there is a myriad of relief that must be sought from the Court immediately, the Debtor will suffer immediate and irreparable harm if it is unable to obtain the services of counsel before a final hearing on the application for approval of counsel's employment

can be convened. It is, therefore, my belief that only with the granting of interim approval of counsel's employment will such immediate and irreparable injury be avoided. In that regard, counsel advises that this relief has been granted in other Chapter 11 cases in this District. *See, e.g., In re Gemini Cargo Logistics, Inc., et al.,* Chapter 11 Case No. 08-18173-BKC-PGH (Bankr. S.D. Fla. June 20, 2008); *In re First NLC Financial Services, LLC, et al.,* Case No. 08-10632- BKC-PGH (Bankr. S.D. Fla. Feb. 13, 2008); *In re Tousa, Inc., et al.,* Case No. 08-10928-BKC- JKO (Bankr. S.D. Fla. Jan. 31, 2008).

### B. Debtor's Emergency Application for Authorization to Employ and Retain GlassRatner as Financial Advisors and James S. Howard as Chief Restructuring Officer *Nunc Pro Tunc* to the Petition Date

25.   The Debtor seeks authority to retain, on an interim and final basis, GlassRatner Advisory & Capital Group LLC ("GlassRatner") as financial advisor, with Jim Howard to serve as Chief Restructuring Officer ("CRO"), *nunc pro tunc* to the Petition Date. The reasons for this requested retention are set forth in the Debtor's application to retain GlassRatner and Mr. Howard.

26.   To the best of the Debtor's knowledge, except as disclosed in the *Declaration of James S. Howard on Behalf of GlassRatner as Proposed Financial Advisor and Chief Restructuring Officer for the Debtor, Nunc Pro Tunc to the Petition Date,* accompanying the Application to retain GlassRatner, neither Mr. Howard nor GlassRatner has any connection with the Debtor's creditors or other parties in interest or their respective attorneys.

27.   For the reasons set forth in the application to retain GlassRatner, the Debtor will suffer immediate and irreparable harm if it is unable to obtain the services of

GlassRatner and Mr. Howard before a final hearing on the application for approval of their employment can be convened.

### C. Debtor's Application for Authorization to Employ and Retain Fuerst Ittleman David & Joseph PL as Special Tax Counsel *Nunc Pro Tunc* to the Petition Date

28. The Debtor seeks authority to retain, on an interim and final basis, Mitchell S. Fuerst and the law firm of Fuerst Ittleman David & Joseph PL ("Fuerst Ittleman") to serve as special tax counsel to the Debtor. The reasons for this requested retention are set forth in the Debtor's application to retain Mr. Fuerst and Fuerst Ittleman.

29. To the best of the Debtor's knowledge, except as disclosed in the *Declaration of Mitchell S. Fuerst,* neither Mr. Fuerst nor Fuerst Ittleman has any connection with the Debtor's creditors or other parties in interest or their respective attorneys.

### D. Debtor's Application for Authorization to Employ Cherry Bekaert, LLP as Accountants *Nunc Pro Tunc* to the Petition Date

30. The Debtor seeks authority to retain, on an interim and final basis, Monte Gordon, CPA and the firm of Cherry Bekaert, LLP to prepare the Debtor's tax returns and, if needed, any amended returns. The reasons for this requested retention are set forth in the Debtor's application to retain Mr. Gordon and Cherry Bekaert, and the work to be performed by Mr. Gordon and Cherry Bekaert will not be duplicative of the work to be performed by Mr. Fuerst and Fuerst Ittleman.

31. To the best of the Debtor's knowledge, except as disclosed in the *Declaration of Monte Gordon,* neither Mr. Gordon nor Cherry Bekaert has any connection with the Debtor's creditors or other parties in interest or their respective attorneys.

32. This concludes my declaration.

### 28 U.S.C. § 1746 Declaration

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 12, 2015.

                                                          James S. Howard
                                                        Chief Restructuring Officer,
                                                        Star Computer Group, Inc.